UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CRYSTAL F. STATLER; ANNA M. APPLEGATE; and KARA L. RANDEN, | CIV. 06-5003-AWB |
| Plaintiffs, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| BUFFALO-BODEGA COMPLEX, INC.; and JOHN MCGILL, in his individual capacity; | |
| Defendants. | |

On March 29, 2007, Plaintiffs filed a motion for default judgment against Defendant Buffalo-Bodega Complex, Inc. Docket 78. On April 5, 2007, the Clerk of Courts filed an entry of default against Defendant Buffalo-Bodega Complex, Inc. Docket 81. Plaintiffs renewed their motion for default judgment against Buffalo-Bodega on May 12, 2008. On July 30, 2008, at the Court's order an entry of default was filed as to Defendant John McGill. Docket 107. On August 14, 2008, this Court held a hearing on the existence of damages owed to Plaintiffs by Defendants. At the hearing, the Court heard testimony from Plaintiffs' witnesses and arguments from Plaintiffs' attorneys. For the reasons stated below, the Court grants Plaintiffs' motion for a default judgment against Buffalo-Bodega Complex, Inc., adopts these findings of fact and conclusions of law, and enters a judgment for Plaintiffs against both Defendants.

**FINDINGS OF FACT**

1. Plaintiffs Statler, Applegate, and Randen were employed at Buffalo-Bodega during Fall 2003 through February 2004. Transcript of Default Judgment Hearing, August 14, 2008, [hereinafter Transcript] page 4 (Statler), 26 (Applegate), 44-45 (Randen).

2. Defendant McGill was hired by the Buffalo-Bodega in late summer / early fall of 2003 as a manager.[1] Complaint, Docket 1, page 2; Transcript, page 4-5. At the time of his hiring, McGill was food and beverage manager of the Buffalo-Bodega. Transcript of Deposition of Allan Rosenfeld, Volume 1, at 36, 39-40 (found at Docket 103-3) (hereinafter Rosenfeld deposition I). McGill had the ability to hire and fire employees, and Plaintiffs believed that McGill was a part-owner in Buffalo-Bodega Complex, Inc. Transcript, page 5, 26, 45-46.

3. Allan Rosenfeld was the owner and sole shareholder of Buffalo-Bodega Complex, Inc., during the pertinent events. Complaint, page 2. Rosenfeld also possessed several sexual harassment manuals. Rosenfeld deposition I at 54-55; see also Exhibit 26 from Default Judgment Hearing, August 14, 2008 (including excerpts from four sexual harassment manuals kept by Rosenfeld).

4. McGill sexually harassed Statler by making overtly sexual comments to her while she was working. Complaint, page 3-4; Transcript, page 5-8. Statler

---

[1] Because both Defendants are in default, all factual allegations in the complaint, except those dealing with amounts of damages, are to taken to be true. Amer. Red Cross v. Community Blood Ctr. of the Ozarks, 257 F.3d 859, 864 (8th Cir. 2001).

told other employees and Allan Rosenfeld about this conduct. Complaint, page 4; Transcript, page 10.

5. On several occasions, McGill walked up behind Statler, rubbed his erect penis against her, and made a sexual statement. Transcript, page 6-7; Complaint, page 4.

6. McGill sexually harassed Plaintiff Applegate by making overtly sexual comments to her while she was working. Complaint, page 6-7; Transcript, page 26-28. Applegate told other employees and Rosenfeld about this conduct. Complaint, page 8; Transcript, page 30-32.

7. On at least one occasion, McGill walked behind Applegate and rubbed his erect penis against her. Transcript, page 28. On other occasions, McGill snapped Applegate's bra strap and pulled up her panties. Complaint, page 7-8; Transcript, page 28. He also followed her into the beer cooler and tried to touch her. Transcript, page 28.

8. McGill sexually harassed Randen by making overtly sexual comments to her while she was working. Complaint, page 9-10; Transcript, page 48-50. Randen told other employees about this conduct. Complaint, page 4; Transcript, page 53-56.

9. On many occasions, McGill walked behind Randen and rubbed himself against her. Transcript, page 50-51. On one occasion, McGill pulled up Randen's panties. Complaint, page 7-8; Transcript, page 49.

10. On October 5, 2004, an attorney for Statler and Applegate sent a letter to McGill and Rosenfeld describing McGill's conduct and asking that the

3

harassing conduct cease, that McGill be prohibited from entering the Buffalo-Bodega, and that McGill no longer supervise Statler and Applegate. Letter from John Burke to Allan Rosenfeld and John McGill, Exhibit 1 from Default Judgment Hearing, August 14, 2008; <u>see also</u> Rosenfeld deposition I, at 40-42.

11. On October 8, 2004, Buffalo-Bodega's attorney sent a letter to Statler and Applegate's attorney stating that Buffalo-Bodega would make "a thorough investigation" of the allegations, would cease McGill's supervision of Statler and Applegate, and would instruct McGill to minimize his contact and communications with the two women. Letter from David Lust to John Burke, Exhibit 2 from Default Judgment Hearing, August 14, 2008.

12. In the course of this investigation by Buffalo-Bodega, Statler and Applegate and other employees were interviewed by Buffalo-Bodega's attorney. Rosenfeld deposition I, page 50, 61; Transcript, page 11-12, 33-34; Complaint, page 5, 8.

13. Buffalo-Bodega's attorney also told Rosenfeld that he should remove McGill from any supervisory authority over Statler and Applegate and be told to minimize any contact with those two women. Letter from David Lust to Allan Rosenfeld, Exhibit 3 from Default Judgment Hearing, August 14, 2008.

14. After the investigation, Buffalo-Bodega told Plaintiffs that McGill was no longer employed at Buffalo-Bodega and would no longer have contact with Plaintiffs as their supervisor. Buffalo-Bodega also told Statler and Applegate that McGill would not be allowed to enter the Bodega while they were

working. Letter from David Lust to John Burke dated October 25, 2004, Exhibit 4 from Default Judgment Hearing, August 14, 2008; Letter from David Lust to John Burke dated November 2, 2004, Exhibit 6 from Default Judgment Hearing, August 14, 2008.

15. Despite these representations to Plaintiffs, however, Buffalo-Bodega did not sever its relationship with McGill. Rosenfeld Deposition I at 93-94, 96-97. Instead, McGill continued to work at Buffalo-Bodega and was present while Statler, Applegate, and Randen worked. Complaint, page 6, 9, 11; Transcript, page 15, 35, 56.

16. In November, 2004, Rosenfeld told Jeremy Van Tassel he was to serve as the bar manager at the Buffalo-Bodega. However, Van Tassel did not have any actual supervisory authority and instead was told by McGill and Rosenfeld to "pretend" like he was the bar manager, including copying employee schedules written by McGill in his own handwriting. Transcript, page 67-70. In reality, McGill continued to retain control over the Plaintiffs' schedules. Transcript, page 67-69. McGill's conduct in this regard was with the cooperation and involvement of Rosenfeld and Buffalo-Bodega. Id. at 67-70.

17. During this time, McGill encountered Plaintiffs frequently inside the Buffalo-Bodega. He stared down from his office at the women, watched them work at the bar, gave them dirty looks, glared, and mumbled things under his breath while in their presence. Complaint, page 6, 9, 11; Transcript, page 14-15, 35-36, 56-57. McGill also became physically aggressive toward Randen and

tried to shove her down while she was carrying buckets of ice.  Transcript, page 56.

18. After Plaintiffs complained about McGill's conduct in October, 2004, Buffalo-Bodega reduced the working hours of all three Plaintiffs.  Complaint, 5, 8-9, 11.  Statler's hours were reduced at least ten hours a week.  Transcript, page 14.  Applegate's work schedule went from about 40 hours a week all the way to 20 hours a week, averaging about 10 to 15 hours less a week.  Id. at 36.  Randen's hours were also cut at least ten hours a week.  Id. at 57.

19. On February 5, 2005, Rosenfeld told Statler and Randen that they were fired.  Complaint, page 6, 11; Transcript, page 16-17, 58-60.  Rosenfeld later sent Statler a letter saying that the firing was a "misunderstanding."  Letter from Rosenfeld to Statler, Exhibit 15 from Default Judgment Hearing, August 14, 2008; Transcript, page 17.  However, when Statler and Randen went to Jeremy Van Tassel, he told them that they indeed had been fired.  He also told them they were "86'd" from the Bodega, or prohibited from ever being on the premises.  Transcript, page 18, 60-61.  Applegate ended her employment with Buffalo-Bodega on February 6, 2005, because the work conditions were deteriorating and because her work schedule had been reduced.  Transcript, page 37; Complaint, page 9.

20. As a result of Defendants' conduct, Statler felt degraded, mad, and ashamed, and it upset her because she could not stop the inappropriate conduct.  Transcript, page 9.

6

21. As a result of Defendants' conduct, Applegate felt very uncomfortable around McGill and became tense when he was around. She felt upset, disrespected, and degraded. She took steps to avoid being alone with him, including asking another male employee to be around when McGill was also around. Transcript, page 29.

22. As a result of Defendants' conduct, Randen felt extremely embarrassed and extremely helpless that she did not know how to fix the situation. Transcript, page 52.

## CONCLUSIONS OF LAW

**Defendant McGill**

1. Defendant McGill discriminated against Statler, Applegate, and Randen by according adverse and unequal treatment to Plaintiffs because of their sex, in violation of S.D.C.L. 20-13-10.

2. McGill intended to cause a harmful or offensive physical contact with Statler, Applegate, and Randen, or immediate apprehension of such contact. In doing so, McGill committed common law assault.

3. Plaintiffs are entitled to compensatory damages from McGill pursuant to S.D.C.L. 20-13-35.1 in the following amounts:

    a.   Statler:   $ 20,000

    b.   Applegate: $ 20,000

    c.   Randen:    $ 15,000

**Defendant Buffalo-Bodega Complex, Inc.**

1. Defendant Buffalo-Bodega was aware of McGill's sexual harassment of Plaintiffs and did not prevent the harassment from occurring.  The conduct by Buffalo-Bodega and McGill was sufficiently severe and pervasive that a reasonable person in the Plaintiffs' position would find the work environment to be hostile.  This conduct from Buffalo-Bodega constituted discrimination based on sex under 42 U.S.C. § 2000e-2(a)(1).

2. McGill and Buffalo-Bodega retaliated against Plaintiffs Statler and Randen as a result of their complaints of sexual harassment by decreasing their work hours and firing them in February, 2005.  McGill and Buffalo-Bodega retaliated against Applegate by reducing her work hours.  Buffalo-Bodega's conduct in this regard violated 42 U.S.C. § 2000e-3.

3. Plaintiffs are entitled to backpay from Buffalo-Bodega pursuant to 42 U.S.C. § 1981a(b)(2) in the following amounts:

    a.   Statler:  $ 31,535.88

    b.   Applegate:  $ 13,055.66

    c.   Randen:  $ 617.50

4. Buffalo-Bodega engaged in discriminatory practices with reckless indifference to the federally protected rights of aggrieved individuals.  Therefore, Plaintiffs are entitled to punitive damages from Buffalo-Bodega pursuant to 42 U.S.C. § 1981a(b)(1).

5. Plaintiffs are entitled to compensatory damages from Buffalo-Bodega under 42 U.S.C. § 1981a(a)(1).

6. A statutory cap limits the total amount of compensatory and punitive damages to $50,000 per claimant. The Court believes that the situations here warrant damages awards above $50,000. However, because of the statutory cap, the Court awards the following amounts of punitive and compensatory damages:

   d. Statler: $ 50,000

   e. Applegate: $ 50,000

   f. Randen: $ 50,000

Good cause appearing, it is hereby

ORDERED that Plaintiffs' motions for default judgment, Docket 78 and 101, are GRANTED.

Dated this 29th day of September, 2008.

BY THE COURT:

/s/ Andrew W. Bogue
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE